

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BARBARA SUE TABER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0236-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Barbara Sue Taber seeks judicial review of a decision of the Commissioner of Social Security concerning her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

### I. Statement of the Case

In a decision dated January 28, 2003, an Administrative Law Judge (ALJ) determined that Taber suffered from severe Chronic Obstructive Pulmonary Disease (COPD), that her disease became disabling on April 1, 2002, when she was fifty-nine years old, and that she was eligible for DIB and SSI as of that date. (Tr. 178, 180.) Taber disputes the ALJ's

finding as to the onset date of her disability and contends that her disability began prior to April 1, 2002.

Taber initially alleged in her applications for benefits that her onset date of disability was February 7, 2001. (Tr. 66, 153, 167.) During a hearing before the ALJ, however, she requested to amend her onset date of disability to May 3, 1999. (Tr. 177.) The ALJ refused Taber's request on grounds that there was no medical evidence in the administrative records dated prior to April 1, 2002. (Tr. 177.) In fact, there were few medical records in the evidence for the ALJ to review, and as the ALJ found, the first medical record was dated April 1, 2002. On that date Taber was treated at an emergency room for a severe cough and other complaints. (Tr. 118.) She was diagnosed with pneumonia, and a radiology report revealed a pulmonary lesion in her right lung and showed that she suffered from COPD. (Tr. 118, 123, 178.) Although the records from April 1, 2002, were the first records indicating that Taber suffered from a severe impairment, she testified that she experienced severe health problems prior to April 1, 2002. She testified that she quit working full-time in May 1999 because of ongoing problems with bronchitis that prevented her from working. (Tr 270-71.) She also testified that she attempted to work again but was forced to quit because of her health; she began working again in September 2000 on a part time basis but quit working entirely at the end of January 2001 because of her pulmonary problems. (*Id.*)

The ALJ noted in his decision that he granted Taber's representative additional time in which to obtain and submit additional medical evidence but that no additional evidence was received. (Tr. 177.) He concluded, based on the medical evidence before him, that

Taber's disability began on April 1, 2002, and that she did not have a medically determinable impairment prior to that date. (Tr. 177, 179.) The Appeals Council denied Taber's request for review, and Taber appealed the Commissioner's final decision to the court in Cause Number 5:03-CV-241. (Tr. 172-74, 186-91.)

The Commissioner filed a motion to remand for the purpose of completing the administrative record, and the court granted the Commissioner's motion. (Tr. 186-90.) After the case was returned to the court the Commissioner sought remand again, this time for the purpose of allowing further administrative development of facts related to Taber's onset date of disabiity. (Tr. 191-92.) The Commissioner stated that on remand the ALJ would be directed to further evaluate the possibility that Taber was disabled prior to April 1, 2002. (Tr. 191.) The Commissioner specifically stated that the ALJ would (1) consider lay evidence from Taber's employer which indicated that she was often sick in 2000 and early 2001; (2) recontact Taber's treating sources for the purpose of determining whether an earlier onset date of disability was appropriate; (3) obtain medical expert evidence to clarify the date of onset and to comment on Taber's residual functional capacity; and (4) if warranted, obtain supplemental vocational expert testimony. (*Id.*)

The court entered judgment remanding Taber's case again for further administrative proceedings, and the Appeals Council entered an order vacating the prior decision and directing the ALJ to conduct further proceedings consistent with the court's order. (Tr. 194, 200-02.) The directives in the order from the Appeals Council echo the directives in the Commissioner's motion for remand. The Appeals Council disapproved of the ALJ's decision

to set Taber's onset date of disability on April 1, 2002, based on the lack of medical evidence prior to that date. (Tr. 200.) Citing Ruling 83-20, the Appeals Council acknowledged that it is error to conclude, based on lack of medical evidence alone, that an impairment was not disabling during a particular period of time and directed that evidence other than medical evidence should be considered to establish the onset date of disability. (*Id.*) Because the radiology report from April 1, 2002, showed evidence of a pulmonary lesion, COPD, and scarring, the Appeals Council found it "problematic" that the ALJ determined that Taber was disabled beginning on April 1, 2002, but that she did not have a medically determinable impairment on March 31, 2002. (Tr. 200-01.) The Appeals Council also noted lay evidence from Taber's employer the ALJ had not considered in his decision.

The Appeals Council directed that on remand the ALJ was required to further develop the record to determine whether Taber's onset date of disability began prior to April 1, 2002. He was required to give further consideration to medical source evidence and lay evidence and explain the weight given to such opinion evidence; recontact, as appropirate, Taber's treating source for the purpose of determining whether an earlier onset date would be appropriate and the extent of Taber's capabilities prior to April 1, 2002; obtain evidence from a medical expert "who has a specialty in respiratory impairments, if available, to clarify the date of onset . . . because it involves a slowly progressive impairment"; and solicit vocational expert testimony if warranted. (Tr. 201.)

The ALJ held a second hearing on September 4, 2004, and a designated medical expert testified at the hearing. (Tr. 212, 267, 275-86.) The ALJ issued a second decision

again finding, based on the lack of medical evidence alone, that Taber was not disabled before April 1, 2002. (Tr. 167-69.) The Appeals Council denied Taber's request for review, and Taber appealed the Commissioner's final decision by filing the complaint in this case.

## II.   Standard of Review

The court's role in reviewing a final decision of the Commissioner of Social Security is to determine whether the decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision. *Watson*, 288 F.3d at 215 (citation omitted). The substantial evidence standard requires more than a "simple search of the record for isolated bits of evidence" that would support the Commissioner's decision; the record must be considered as a whole. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted). Accordingly, a court must "take into account whatever in the record fairly detracts" from the supporting evidence. *Id.* (quotation omitted).

## III.   Discussion

The onset date of disability is the first day an individual is "disabled" as that term is defined in the Social Security Act and regulations. 1983 WL 31249, S.S.R. 83-20 at * 1. Because the onset date of disability may affect the period for which the claimant is paid benefits, the determination of the date must be correctly established and supported by

5

evidence. *Id.* at *3. The ALJ must consider the claimant's allegations, the claimant's work history, and medical and other evidence in determining the correct onset date. *Id.* at *2. In addition, in cases in which the claimant's disability arises from a slowly progressive impairment, the ALJ must consult a medical advisor when precise medical evidence is not available and the onset date must be inferred from what evidence is available. *Id.* at *2-3.

Taber contends and the Commissioner acknowledges that her COPD is a slowly progressive impairment. (Tr. 201.) In the case of slowly progressive impairments, the ALJ must consult a medical advisor when precise medical evidence is not available and the onset date must be inferred from what evidence is available. *Id.* At *3. Such inferences should be determined from an "informed judgment of the facts in the particular case" and must have a "legitimate medical basis"; therefore, the ALJ should consult with a medical advisor before inferring an onset date. *Id.* at *3; *see also Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993).

Based on the directives of Ruling 83-20, the holding in *Spellman*, the Commissioner's directives in the motion to remand, and the directives in the Appeals Council's order, the ALJ in this case was required to consider evidence beyond the medical evidence and was specifically required to consult with a medical advisor. However, he did not do so. As in his first decision, the ALJ made clear that his determination regarding Taber's onset date was based on the lack of medical evidence in the record. The ALJ stated, "Once again there is virtually no medical evidence whatsoever dated prior to April 1, 2002," and concluded that Taber did not have a medically determinable impairment as of or prior to March 31, 2002.

6

(Tr. 168-69.)

The ALJ noted in his decision that on April 1, 2002, Taber sought emergency care treatment reporting that she had experienced cough and shortness of breath for one week. (Tr. 168.) The ALJ appears to base his decision that Taber's disability began on April 1, 2002, on her report to the emergency room physician on that date. (*See id.*) The ALJ was of the opinion that because there was no medical evidence prior to April 1, 2002, and because Taber reported experiencing symptoms for one week prior to April 1, 2002, that she did not have symptoms prior to that date. (*See id.*) However, other evidence indicates that Taber experienced symptoms prior to this date. Specifically testimony from Taber, a statement from her former employer, and testimony from the medical expert indicates that she would have experienced severe symptoms prior to April 1, 2002.

Taber testified under oath that she quit working full-time in May 1999 because of ongoing problems with bronchitis that prevented her from working. (Tr. 271.) She also testified that she attempted to work again but was forced to quit because of her health; she began working again in September 2000 on a part time basis but quit working entirely at the end of January 2001 because she was "sick all the time." (Tr. 270-71.) She testified that during 2001 she experienced recurring problems with bronchitis which was treated with antibiotics, inhalers, and steroids and that following treatment her symptoms remained controlled for three weeks to one month but would recur again and the pattern of illness

would repeat.[1] (Tr. 272-73.) A statement from Taber's former supervisor, Dana Miller, corroborates Taber's testimony. Miller provided a statement indicating that she worked with Taber in 2000 and early 2001 and that Taber was "often sick and coughing and had difficulty breathing." (Tr. 100-01.)

George Waite Weilepp, M.D., the medical expert designated by the ALJ, testified that Taber had a serious lung problem that was severe and presented intermittent symptoms. (Tr. 281.) He further indicated that the illness was one in which the patient is faced with recurring and incapacitating symptoms. (Tr. 281-82.) He also testified that sometime between the time frame of February 2001 and April 2002 Taber became incapable of performing even sedentary work and that it was possible that her condition was as severe in February 2001 as it was after the date on which the ALJ determined that she became disabled. (Tr. 284-85.) On the other hand, he agreed with the ALJ that there was nothing to suggest that her condition was not as severe in February 2001 as it was after April 1, 2002. (Tr. 286.)

---

[1] Taber's treatment history from that time is not available. Taber testified that she did not have a treating physician at that time because she received treatment at walk-in clinics and that at such clinics patients are not assigned to the same physician at every visit. Taber's representative reported that he had attempted to acquire records from the clinics but was unable to do so. Apparently some of the clinics were subsequently acquired by another health care provider and no longer had Taber's records and other clinics no longer existed. (Tr. 274.)

Although the ALJ was ordered to obtain medical expert testimony, it is not clear what if any weight he gave to Dr. Weilepp's testimony.[2] In fact, he did not acknowledge Dr. Weilepp's testimony and did not analyze it or rely upon it to make his determination as to Taber's onset date of disability; there is no discussion whatsoever of Dr. Weilepp's testimony in the text of the ALJ's decision  (Tr. 167-69.)

In a case such as Taber's, the Commissioner's Rulings and the law in the Fifth Circuit require that inferences regarding onset date of disability must have a "legitimate medical basis" and must be determined from an "informed judgment of the facts in the particular case." *Spellman*, 1 F.3d at 362; 1983 WL 31249, S.S.R. 83-20 at *3. The Fifth Circuit Court of Appeals has held that when inferences must be drawn regarding onset date of disability, an informed judgment cannot be made without the assistance of a medical advisor. *Spellman*, 1F.3d at 362. The ALJ in this case did not follow the appropriate legal procedure as set forth under *Spellman*; his decision was not made with the assistance of a medical advisor. Although he solicited testimony from Dr. Weilepp at the hearing, he failed to utilize his testimony in the decision-making process. This was clearly inadequate and contrary to the legal procedures set forth under the holding in *Spellman*, which directs that the ALJ must make his decision with the assistance of a medical advisor. Because the ALJ did not follow

---

[2] The ALJ may have determined that Dr. Weilepp's testimony was not credible, and it would be understandable if he made such a determination. Dr. Weilepp's testimony was confusing, and he appeared confused as to what records he was viewing and which records related to the issue at hand. (Tr. 277-78.) In addition, Dr. Weilepp is not a pulmonary specialist; he is an orthopedic specialist and indicated that he had not undergone formal training in pulmonary medicine. He stated, "I've had some non-formal training. My first wife was a pulmonary specialist in San Francisco, and I've dealt with lung diseases for 45 years along with general body issues." (Tr. 277.)

correct legal procedure, his decision as to the onset date of Taber's disability is not supported by substantial evidence.

## IV. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Taber's case for further administrative proceedings.

## V. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: June 13, 2006.

NANCY M. KOENIG
United States Magistrate Judge